**Eva Marie CUMMINGS,
Plaintiff–Appellee,**

v.

**HORACE MANN INSURANCE
COMPANY, Defendant–
Appellant. (Two Cases)**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1993.

Decided June 23, 1993.

William Layton Duncan, Butler, Means, Evins & Browne, Spartanburg, SC, argued

(Edward G. Smith, of counsel), for defendant-appellant.

Gregory Alan Morton, Donnan & Morton, P.A., Greenville, SC, argued, for plaintiff-appellee.

Before ERVIN, Chief Judge,
HAMILTON, Circuit Judge, and WARD, Senior United States District Judge, for the Middle District of North Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Horace Mann Insurance Company ("Horace Mann") appeals the award of $50,000 entered by the district court in favor of Eva Marie Cummings pursuant to an underinsured motorist policy. The issue is whether the district court erred in holding that the terms of the policy were ambiguous and therefore that Cummings' loss of consortium claim constituted a bodily injury under the policy. Finding the terms of the policy clear, we reverse the decision of the district court.

### I

On February 2, 1991, Irvin and Eva Cummings were passengers in a Jeep operated by Robert Kimbrell which overturned. Eva Cummings only received minor physical injuries. Irvin Cummings, however, was paralyzed from the waist down. Both Irvin and Eva Cummings sued Kimbrell for injuries sustained in the accident. Kimbrell's insurance company paid its policy limits of $30,000 to Eva Cummings for her injuries, and the same amounts to Irvin Cummings for his injuries.

At the time of the accident the Cummings were holders of an underinsured motorist policy issued by Horace Mann. This policy had been changed prior to the accident by an Amendatory Endorsement Document which was accompanied by an explanatory flier. The policy limits stated that each person was insured for $50,000 per bodily injury, up to $100,000 per accident. Irvin and Eva Cummings filed a claim pursuant to the Horace Mann policy for their injuries. Horace Mann settled Irvin Cummings' bodily injury claim for $50,000. Eva Cummings presented a claim for loss of consortium, a consequential damages claim, to Horace Mann, which the company denied. Horace Mann contended that Eva Cummings' loss of consortium claim was included in Irvin Cummings' $50,000 settlement for his bodily injuries under the terms of the policy.

Eva Cummings filed suit against Horace Mann asserting that the loss of consortium claim was personal to her and could not be part of her husband's settlement. She alleged that the underinsured motorist policy provided separate recovery for loss of consortium and sought $50,000 in damages. Eva Cummings further sought a declaration that South Carolina law required underinsured motorist coverage be made available for her claim.

Before trial Eva Cummings moved for summary judgment. The court granted the motion, holding that the underinsured motorist policy was ambiguous and therefore should be construed against the insurer. The district court opined that the policy's "explanatory document seems to indicate that a consortium claim is a bodily injury, which contradicts other parts of the policy." J.A. at 62. The court also stated that the policy should be construed so that the loss of consortium claim is her personal bodily injury claim separate from her husband's bodily injury claim and award. The court awarded Mrs. Cummings $50,000 for her bodily injury claim pursuant to the underinsured motorist policy. Horace Mann appealed.

### II

Horace Mann contends that the district court erred in concluding that an explanatory flier accompanying the Amendatory Document was part of the insurance policy and created an ambiguity within the insurance contract. The explanatory flier stated: "Bodily injury: our definition now includes all injury and damages to others resulting from an accident." This language seemingly conflicts with the language in the policy. The language in the "Readable Car Policy Amendatory Endorsement," which was in effect at the time of the accident, states:

Bodily injury means bodily injury to a person and all resulting sickness, disease, or death and *includes all injury and damages to others resulting from this bodily injury,* i.e. consequential damages. (emphasis added). The flier, however, explicitly stated that

[t]his brochure is a brief summary of the changes and clarifications we made. For a detailed explanation of the changes, please consult your policy and the amendatory endorsement that we have enclosed.

This disclaimer alerts the reader that the flier is only a summary and does not constitute the actual terms of the policy. Horace Mann had amended the policy in order to clarify the definition of bodily injury for determining consequential damages such as a loss of consortium claim.

■■■ South Carolina law provides that the "terms of an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.,* 301 S.C. 418, 392 S.E.2d 460, 461 (1990). The South Carolina Supreme Court has mandated that "where language used by an insurance company is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." *Poston v. National Fidelity Life Ins. Co.,* 303 S.C. 182, 399 S.E.2d 770, 772 (1990).

■■■ The district court erred in concluding that the underinsured motorist policy's language was ambiguous because the court included a document that was not part of the underinsured motorist policy. In *Yarborough v. Phoenix Mutual Life Ins. Co.,* 266 S.C. 584, 225 S.E.2d 344 (1976) the South Carolina Supreme Court held that an informational sticker attached to the contract explaining some of the terms did not constitute part of the contract. *Id.* at 348. The informational sticker explicitly stated that it was not part of the group policy. In the instant case the flier stated that it was only a summary of the policy, not the insurance policy's actual terms. The reader was directed to read the policy, which was attached to the summary, to determine actual coverage.

The *Yarborough* court further stated that the sticker and accompanying certificate could be considered in construing the policy only "if an ambiguity exists within the policy itself." *Id.* The district court did not find an ambiguity within the actual policy; instead, it relied on the explanatory document and the policy together to find the ambiguity. Contrary to Mrs. Cummings' assertions, there is no ambiguity within the policy itself; it is clear and unequivocal in defining bodily injury to include consequential damages to others resulting from the insured's bodily injury.

Moreover, the district court failed to consider another provision within the four corners of the insurance policy—the section entitled "Underinsured Motor Vehicle–Coverage S and S1." The relevant provision reads:

The limit of liability coverage, stated in the declarations as applicable to Each Person is the limit of our liability for all damages and causes of action resulting from this bodily injury sustained to one person in any one accident. Bodily injury to one person includes all injury and damages to others resulting from this bodily injury.

J.A. at 52. These terms of Mrs. Cummings' underinsured motorist policy expressly limit her loss of consortium claim and include this claim in the award given to her husband for his injuries.

■■■ Even if the policy terms were ambiguous and therefore subject to judicial interpretation, the district court's decision is at odds with South Carolina law regarding consequential damages, such as a loss of consortium claim. The South Carolina Supreme Court, in interpreting an uninsured motorist provision, has limited the availability of consequential damages. *See Sheffield v. American Indemnity Co.,* 245 S.C. 389, 140 S.E.2d 787, 798 (1965). In that case Sheffield and his wife were involved in an accident in which she was severely injured, but he was not. She recovered the maximum for her injuries under their uninsured motorist coverage. Sheffield sought to recover an additional $10,000.00 for his loss of consortium claim pursuant to the uninsured motorist coverage.

The court held that Sheffield was not entitled to recover for consequential damages for his wife's injuries under the policy. The court stated that since Mrs. Sheffield had been compensated by the uninsured motorist policy for her injuries, "her husband, who has sustained no physical injury, cannot recover from the insurer for consequential damages on account of loss of consortium ... arising out of injury to his wife since he sustained no 'bodily injury' within the meaning of the uninsured endorsement." *Id.* at 791. In reaching its conclusion, the *Sheffield* court relied in part on the general rule for liability under an automobile liability policy involving no uninsured motorist provision. South Carolina follows the principle that

> [c]onsequential damages such as loss of consortium ... are generally held not to constitute bodily injuries' within the meaning of automobile liability policies limiting liability to a stated amount for "bodily injuries" to one person.

*Id.* at 790.

This principle is helpful in interpreting underinsured motorist provisions and provides a useful guidepost if the language is deemed unclear. In the instant case the language of the underinsured motorist policy includes consequential damages as part of the payout of the insured who received bodily injuries.

### III

The district court erred awarding judgment to Mrs. Cummings on her loss of consortium claim. The clear and unambiguous language of the underinsured motorist policy prohibits her recovery. Therefore, the decision of the district court is

*REVERSED.*